## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

CRIMINAL ACTION NO. 4:13-CR-00033-JHM-HBB-1
CIVIL ACTION NO. 4:19-CV-00001-JHM-HBB

AMUARY VILLA                                                              MOVANT / DEFENDANT

V.

UNITED STATES OF AMERICA                                              RESPONDENT/PLAINTIFF

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a remand from the Sixth Circuit Court of Appeals for clarification of the Court's original Certificate of Appealability. [DN 218].

### I. BACKGROUND

In 2016, Amuary Villa pleaded guilty to conspiring to commit an offense against the United States in violation of 18 U.S.C. § 371, and aiding and abetting the theft of an interstate shipment in violation of 18 U.S.C. §§ 659 and 2. [DN 78]. The Court sentenced Villa to 77 months of imprisonment on each count to run concurrently with each other but consecutively to sentences he was serving in Connecticut and Florida. [DN 90].

Villa filed a 28 U.S.C. § 2255 petition on January 2, 2019, seeking to vacate his 77-month federal sentence. [DN 129]. His petition laid out nine grounds of ineffective assistance of counsel. [*Id*.]. Over a year later, on January 28, 2020, Villa sought to amend and supplement his petition to add a tenth ineffective assistance of counsel claim. [DN 174]. The proposed tenth claim was that Villa's trial counsel "fail[ed] to present, convey and discuss a government plea offer/agreement" with him, and "failed to advise [him] that the government was willing to recommend a concurrent sentence if [he] agreed to provide additional cooperation by pleading guilty and agreeing to cooperate and testify against [a] co-defendant." [*Id*. at 4, ¶ 11]. These

1

claims arise from emails that Villa's trial counsel received from an Assistant United States Attorney ("AUSA") on the case. At the time of his plea, Villa was serving time on criminal charges in Connecticut and Florida. One email suggested that if Villa testified against a co-defendant, the prosecutor would recommend his sentence run concurrently with the two other federal sentences. [DN 174-2]. The second relevant email was a formal plea offer. [DN 174-1]. Villa claims he was not informed of either option.

The United States Magistrate Judge denied leave to amend the petition because it was not timely filed. [DN 188]. The Magistrate Judge recognized that "[t]he proposed additional claim is based on facts that were not available to Villa at the time he entered his plea," but proceeded to deny leave to amend because Villa was on notice of the government's interest in cooperation in February 2016, when an AUSA asked Villa if he would be willing to testify against his co-defendant. [*Id*. at 3, 5]. According to the Magistrate Judge, this statement should have put Villa on notice that the government was interested in a plea agreement and Villa's failure to inquire about any plea agreements offered to his attorney dooms his case. [*Id*. at 6]. The United States Magistrate Judge also recommended denying Villa's § 2255 motion on the merits. [DN 200].

Villa objected to both decisions. [DN 204, DN 207]. Villa claims his proposed amended petition was timely filed because he never knew or had reason to suspect his trial counsel received a plea offer and his trial counsel never discussed the concurrent sentence option with him. [DN 204 at 4; DN 174 at 9]. He only learned of the plea offer and concurrent sentence option when he received discovery from his trial counsel in October 2019. [DN 174 at 5].

The Court overruled Villa's objections, denied his § 2255 motion, and declined to issue a Certificate of Appealability on any of Villa's nine original claims. By separate order, the Court found that the tenth claim Villa sought to add to his § 2255 motion—"that counsel failed to convey

2

a plea offer—was untimely because (1) if Villa had acted diligently, he could have discovered the plea offer at the time that he entered his guilty plea, and (2) the proposed claim did not relate back to the filing date of Villa's § 2255 motion." [DN 218 at 3]. The Court then granted a Certificate of Appealability ("COA") to the extent that Villa challenged the Magistrate Judge's order denying his motion to amend his § 2255 motion to add the tenth claim. [*Id.* at 4]. The Court did not identify its reasons for issuing the COA as to the denial of the motion for leave to amend. [DN 209, DN 210].

In January 2021, Villa appealed this decision. [DN 211]. The government moved to dismiss the appeal, or, alternatively, vacate the Court's order granting a COA on the one issue and remand so that the district court could explain its reasoning for granting a COA. [DN 218]. The Sixth Circuit denied the government's motion to dismiss the appeal, but granted its alternative argument. As a result, the Sixth Circuit vacated the COA issued by the Court and remanded the case to the Court "to explain or reexamine its decision to grant a COA." [DN 218 at 4].

## II. STANDARD OF REVIEW

A prisoner seeking postconviction relief under 28 U.S.C. § 2255 "has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a COA." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).

"Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When, however, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner

3

shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* In such a case, no appeal is warranted. *Id.* See also *Ayers v. Hall*, No. 317-CV-00684, 2020 WL 4018806, at *11 (W.D. Ky. July 16, 2020).

The Court is required to make an individual assessment of the issues and to indicate which specific issue or issues satisfy or do not satisfy the standard of § 2253(c). *See Moody v. U.S.*, 958 F.3d 485 (6th Cir. 2020); *Hill v. Mitchell*, 400 F.3d 308, 329 (6th Cir. 2005); *Frazier v. Huffman*, 343 F.3d 780, 788–89 (6th Cir. 2003).

### III. DISCUSSION

As explained by the United States Supreme Court in *Slack v. McDaniel*, "[d]etermining whether a COA should issue where the petition was dismissed on procedural grounds has two components, one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *Slack*, 529 U.S. at 484–85. Thus, in this case, "[s]ection 2253 mandates that both showings be made before the court of appeals may entertain the appeal." *Id.* at 485.

**A. Procedural Grounds**

A petitioner proceeding under § 2255(f)(4) must bring the petition within one year of "the date on which the facts supporting the claim . . . could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). "This standard 'does not require the maximum feasible diligence, only due, or reasonable, diligence.'" *Jefferson v. United States*, 730 F.3d 537, 544 (6th

4

Cir. 2013) (quoting *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006)). The court's task is "to determine when a duly diligent person in petitioner's circumstances would have discovered" the facts supporting the claim. *DiCenzi*, 452 F.3d at 470.

In denying Villa's objections to the Magistrate Judge's order denying Defendant's Motion to Amend and Supplement the § 2255 petition, the Court found that a reasonably diligent person in Villa's situation would have discovered the undisclosed plea agreement and the potential concurrent sentence agreement.

### 1. Undisclosed Plea Agreement

With respect to Villa's objections related to the alleged undisclosed plea agreement, the Court held in relevant part:

> [T]he record indicates that on January 9, the AUSA sent a proposed plea agreement to Villa's attorney. [DN 174-1]. Assuming for purposes of this matter that Villa's attorney did not communicate the plea offer to him, the record clearly shows that Villa nonetheless was on notice that the government formally offered a plea agreement to his attorney. At the Change of Plea hearing, three months after the February meeting, the Court had the following colloquy with the parties:
>
> THE COURT: And I also understand that there is no plea agreement in this case; is that right?
> THE DEFENDANT: Correct.
> THE COURT: Okay.
> THE DEFENDANT: That is correct. And the reason why there's no plea agreement is because we haven't been able to come to an agreement with the government, but I accepted my responsibility back in 2013.
> THE COURT: Okay. All right. But you offered an agreement?
> MR. JUDD: I did. I sent them an agreement, yes, sir.
> THE COURT: And you received it, Mr. Meier?
> MR. MEIER: We did, Your Honor.
> THE COURT: You communicated that to Mr. Villa?
> MR. MEIER: That's correct.
> THE COURT: And the terms were just not acceptable?
> MR. MEIER: That's correct, Judge.
> THE COURT: All right.

[DN 108 at 5–6].

> If Villa had not been notified of the plea agreement, then this exchange, with Villa present and communicating, certainly would have triggered his duty of due diligence. A reasonably diligent defendant under these circumstances would not sit silent, particularly one as actively engaged in the process as Villa was. A reasonably diligent defendant would object in the moment or ask counsel about it later. Villa's duty of "reasonable diligence" for the plea agreement triggered no later than the Change of Plea hearing in May 2016. *See DiCenzi*, 452 F.3d at 470. Villa's failure to bring this claim within the prescribed one-year period renders it untimely.

[DN 210 at 4].

After further review of this decision in light of the COA case law cited above, the Court finds that reasonable jurists would not question the Court's denial of relief on this claim. Accordingly, a certificate of appealability on this issue is not granted.

### 2. *Potential Concurrent Sentencing Agreement*

As discussed above, on January 9, 2016, the AUSA sent a proposed plea agreement to Villa's attorney. [DN 174-1]. Importantly to this discussion, the plea agreement contained a Plea Supplement attached indicating that Villa would *not* be cooperating with the government. [DN 174-1 at 12]. The record reflects that on January 21, 2016—11 days after the initial plea agreement was tendered to defense counsel—the AUSA once again emailed defense counsel inquiring about the status of Villa's plea and further stating:

> I would agree that you all could argue for concurrent sentences but I'm not going to recommend it at this time unless there is some additional cooperation. For instance, if he pleaded, cooperated against Camillo, and testified, I would consider changing that recommendation.

[DN 174-2].

With respect to Villa's objections related to the alleged undisclosed concurrent sentencing agreement, the Court held in relevant part:

> As to the first aspect, the Court agrees with the Magistrate Judge that the February 2016 meeting between Villa and the AUSA was sufficient to trigger an inquiry by a reasonably diligent person in Villa's situation in an effort to discover that the

6

> government suggested a concurrent sentence recommendation to Villa's attorney. At the meeting, the AUSA told Villa that "we want you to testify against [your co-defendant]." [DN 174-3 ¶ 9]. That statement, although brief, should have put Villa on notice that the government was interested in his testimony. If the government was interested in his testimony, the only natural conclusion is that a cooperation agreement was possible (including a concurrent sentence recommendation). Therefore, "reasonable diligence" in this situation required Villa to ask his attorney about undisclosed potential cooperation agreements.

[DN 210 at 6–7].

A review of the record persuades the Court "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. A reasonable jurist could disagree with the undersigned that the February 2016 meeting between Villa and the AUSA was sufficient to trigger an inquiry by Villa regarding the possibility of a cooperation agreement which would necessarily include a concurrent sentence recommendation. In the meeting at issue, Villa avers that the AUSA stated: "we want you to testify against [your co-defendant]." [DN 174-3 at 2]. This statement clearly put Villa on notice of the government's interest in his testimony, but it said nothing about the government's interest in a concurrent sentence. Arguably, reasonable jurist could conclude that, at most, the statement only gave Villa knowledge of his duties under a potential updated plea agreement—the duty to testify against his co-defendant. But it provided no information about the government's obligations under such an agreement—including a concurrent sentence recommendation. Furthermore, the record reflects that Villa's counsel was not present at the meeting in question because of a family emergency. [DN 180-1].

Accordingly, if a reasonable jurist had instead concluded that Villa in the exercise of reasonable diligence would not have been aware of the concurrent sentence offer until December 7, 2019, then Villa's tenth claim would have been timely pursuant to § 2255(f)(4). 28 U.S.C. §

2255(f)(4) (requiring the petition to be brought within one year of "the date on which the facts supporting the claim . . . could have been discovered through the exercise of due diligence").

### B. Denial of Constitutional Right

Having satisfied the procedural prong as to the concurrent sentence, Villa must demonstrate that the petition states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). Villa claims that his trial counsel's failure to communicate with him regarding the January 21, 2016, email from the AUSA regarding a potential concurrent sentence recommendation was ineffective assistance of counsel. To establish ineffective assistance, Villa must show that failing to communicate the potential concurrent sentence recommendation was both deficient in performance and resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The performance prong requires the defendant to 'show that counsel's representation fell below an objective standard of reasonableness.'" *Hunter v. United States*, No. 20-3181, 2021 WL 2433610, at *3 (6th Cir. June 11, 2021) (quoting *Strickland*, 466 U.S. at 688). "The prejudice prong requires the defendant to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Hunter*, 2021 WL 2433610, at *3 (quoting *Strickland*, 466 U.S. at 694).

"No question exists that the Sixth Amendment right to effective assistance of counsel extends to plea negotiations." *Compean v. United States*, No. 3:06-CR-50, 2013 WL 6196517, at *6 (W.D. Ky. Oct. 18, 2013) (citing *Padilla v. Kentucky*, 559 U.S. 356 (2010); *Lafler v. Cooper*, 566 U.S. 156 (2012)). The Sixth Amendment requires that defense counsel "'communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.'" *Compean*, 2013 WL 6196517 at *6 (quoting *Missouri v. Frye*, 566 U.S. 134 (2012)).

Additionally, the Sixth Circuit recognizes a *Strickland* claim due to deficient performance in the plea-bargaining process. *Bryd v. Skipper*, 940 F.3d 248, 256 (6th Cir. 2019).

> "[T]he Sixth Amendment's requirement that defendants receive 'the effective assistance of competent counsel' extends to all critical stages of a criminal proceeding.'" *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019) (quoting *Lafler*, 566 U.S. at 163, 132 S.Ct. 1376), as well as the Supreme Court's long-standing recognition that "the negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel," *id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)), the Sixth Circuit concluded that the existence "of a more favorable plea offer" is not a threshold requirement to assert a *Strickland* claim due to deficient performance in the plea-bargaining process. *Id.* at 256 (relying on *Rodriguez-Penton v. United States*, 905 F.3d 481, 489 (6th Cir. 2018)).

*Robinson v. United States*, No. 3:13-CR-71, 2020 WL 5805513, at *5 (E.D. Tenn. Sept. 29, 2020). Thus, plea negotiations in this case began at the latest with the plea offer tendered by the AUSA on January 9. The email exchange on January 21 reflects that discussions regarding Villa's cooperation with the government in exchange for a concurrent sentence recommendation was part of the plea-bargaining process. Thus, it appears to the Court that defense counsel was obligated to inform Villa of the concurrent sentence recommendation and that failure to do so may constitute deficient performance under *Strickland*. *See Robinson v. United States*, 2020 WL 5805513, at *5 (E.D. Tenn. Sept. 29, 2020); *Byrd v. Skipper*, 940 F.3d 248, 256 (6th Cir. 2019)

If the facts reveal that defense counsel failed to inform Villa of the concurrent sentence recommendation, the "second *Strickland* prong . . . 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" *United States v. Gooden,* No. 17-CV-152, 2017 WL 9325622, at *8 (E.D. Ky. Nov. 30, 2017) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In other words, courts have found that a petitioner can satisfy *Strickland* by "establishing a reasonable probability that, absent counsel's errors, the defendant would have bargained for a better plea." *Byrd*, 940 F.3d at 256 (citing *Gabay v. Woodford*, 418 F. App'x 649,

9

651 (9th Cir. 2011) (suggesting defendant could have established prejudice based on counsel's failure to engage in plea negotiations if he had shown that government was willing to offer a plea deal)).

To establish whether an attorney's conduct in negotiating a plea agreement amounts to prejudicially ineffective assistance, Villa must show that there is a reasonable probability that, but for counsel's errors, he would have accepted the plea offer—agreeing to cooperate to secure the concurrent sentence recommendation, "the prosecution would not have rescinded the offer, and that the trial court would not have rejected the plea agreement." *Byrd*, 940 F.3d at 257. Clearly, the concurrent sentence recommendation would have resulted in a lesser sentence than that which the Villa ultimately received. *Compean*, 2013 WL 6196517 at *6 (citing *Lafler*, 566 U.S. at 164; *Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004); *Magana v. Hofbauer*, 263 F.3d 542, 547–48 (6th Cir. 2001)). The record reflects that an initial plea offer was made, a discussion regarding a concurrent sentence in exchange for cooperation occurred, and Villa represents that he was willing to testify for the prosecution in exchange for concurrent sentence recommendation which would reduce his total time served.

The Court is cognizant of its "gatekeeping process for federal habeas appeals" recently discussed in *Moody v. U.S.*, 958 F.3d 485, 487 (6th Cir. 2020). However, the Court believes that a COA should issue as to this claim because it is deserving of further review on appeal. No fact finding or review by the Magistrate Judge occurred on this constitutional claim because both the Magistrate Judge and the undersigned deemed the claim untimely. Because fair-minded jurists could find the Court's resolution of this claim debatable or wrong, the Court hereby grants Petitioner a COA as to this claim for relief pursuant to 28 U.S.C. § 2253(c).

For the reasons stated above, **IT IS HEREBY ORDERED** that a Certificate of Appealability will be **ISSUED** as to the denial of the motion for leave to amend related to the concurrent sentence recommendation claim and **DENIED** as to the remaining claims consistent with this opinion.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Counsel of Record
     United States Court of Appeals for the Sixth Circuit

May 10, 2022