UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CRIMINAL ACTION NO. 4:13-CR-00033-GNS-HBB-1
CIVIL ACTION NO. 4:19-CV-00001-GNS-HBB

AMAURY VILLA                                                    MOVANT/DEFENDANT

v.

UNITED STATES OF AMERICA                               RESPONDENT/PLAINTIFF

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Objections (DN 263)[1] and Plaintiff's

Objections (DN 265) to the Magistrate Judge's Findings of Fact, Conclusions of Law, and

Recommendation ("R. & R.") (DN 259) on Defendant's Motion to Amend and Supplement 2255

Petition (DN 174). For the following reasons, the objections are **OVERRULED**, the R. & R. is

**ADOPTED**, and the motion is **DENIED**.

## I.     STATEMENT OF CLAIMS

In 2011, Movant/Defendant Amaury Villa ("Villa") was involved with two large-scale

burglaries relating to the theft of pharmaceuticals from a Connecticut warehouse that were later

---

[1] Throughout Villa's objections, his counsel erroneously refers to the Magistrate Judge as
"Magistrate." "Since 1991 the proper title is 'Magistrate Judge.' If counsel wishes to shorten the
title, normally it is shortened to 'Judge' and not 'Magistrate.' Counsel would certainly not refer
to a Bankruptcy Judge as 'Bankruptcy' or call a Lieutenant Colonel in the Army 'Lieutenant.'"
*Lannom v. Wild*, No. 3:12-MC-0051, 2012 WL 4757948, at *1 n.1 (M.D. Tenn. Aug. 21, 2012);
*see also United States v. Higby*, No. 4:15-CR-0142 JAJ, 2015 WL 13914071, at *1 (S.D. Iowa
Dec. 2, 2015) ("To avoid confusion with state court justices of the peace or other part time judicial
officers with relatively little responsibility, Congress changed the title for Article I judicial
officers from 'Magistrate' to 'Magistrate Judge'. . . . They should be referred to as 'Magistrate Judge'.
They work in the United States District Court.").

transported to Florida, and cigarettes from a Kentucky warehouse.  *See Villa v. United States*, 56 F.4th 417, 419 (6th Cir. 2023).  Federal grand juries sitting in Connecticut and Florida later indicted Villa for the crimes relating to the pharmaceuticals.  *See id.*  On December 11, 2013, a federal grand jury sitting in this district indicted Villa for two crimes relating to the cigarette heist, but that indictment was initially sealed.  *See id.*

Villa pleaded guilty to the charges in the Connecticut and Florida federal cases, and he was sentenced to concurrent sentences of 140 and 98 months, respectively.  *See id.*  Because the federal indictment in this district was sealed, Villa was unaware of this indictment at the time he entered the guilty pleas relating to the theft of the pharmaceuticals.  *See id.*

After the indictment was unsealed in this Court and no plea agreement was reached, Villa entered an open plea to the charges of conspiracy to commit an offense against the United States, and aiding and abetting theft of an interstate shipment.  (Order, DN 78).  On September 2, 2016, this Court sentenced Villa to a total term of 77 of imprisonment to run consecutively to his sentences in the other two federal cases.  (J. & Commitment Order 3, DN 90).  On October 11, 2017, the Sixth Circuit affirmed the sentence imposed.  (6th Cir. Order, DN 119).

In January 2019, Villa moved to set aside his sentence pursuant to 28 U.S.C. § 2255. (Def.'s Mot. Vacate, DN 129).  In his motion, he asserted nine claims of ineffective assistance of counsel.  (Def.'s Mot. Vacate 14-39).  In conjunction with the filing of that motion, Villa's post-conviction counsel requested the complete file from his trial counsel, Don Meier ("Meier") of the Federal Public Defender's Office.  *See Villa*, 56 F.4th at 420.  The file produced, however, lacked two January 2016 emails between Meier and Assistant U.S. Attorney Joshua Judd ("Judd") regarding a potential plea agreement.  *See id.*  After a follow-up request for the missing emails, those communications were provided to Villa's counsel in October 2019.  *See id.*

After receiving those emails, Villa's counsel moved to amend the Section 2255 motion to assert a tenth claim regarding the potential plea agreement.  (Def.'s Mot. Amend, DN 174).  This Court denied the motion to amend as untimely and subsequently denied Villa's motion to vacate without conducting an evidentiary hearing over Villa's objection.  (Mem. Op. & Order 1-7, DN 188; R. & R., DN 200; Def.'s Objs., DN 207; Order 1, DN 209).  On appeal, the Sixth Circuit reversed this Court's decision and remanded the matter for further proceedings, including a potential evidentiary hearing as to the tenth claim.  *See Villa*, 56 F.4th at 420-21.

On remand, the Magistrate Judge directed the parties to file briefs as to the scope of an evidentiary hearing.  (Order, DN 229).  On June 15-16, 2023, the Magistrate Judge conducted a hearing on this claim.  Subsequently, the Magistrate Judge issued the Findings of Fact, Conclusions of Law, and Recommendation ("R. & R.") in which it was recommended that: (i) the tenth claim be denied as time-barred; (ii) even if the claim were not time-barred, that this claim be denied on the merits; and (iii) a certificate of appealability be issued for this claim.  (R. & R. 25, 32, DN 259).  Both parties then objected to the R. & R.  (Def.'s Objs., DN 263; Pl.'s Objs., DN 265).

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72, a district court may refer a Section 2255 motion to a magistrate judge to conduct an evidentiary hearing, if necessary, and submit proposed findings of fact and recommendations for the disposition of the petition.  Fed. R. Civ. P. 72(b)(2) provides a defendant with fourteen days after service to register any objections to the recommended disposition.  This Court must "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic."  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007)

(alterations in original) (citation omitted).  The Court does not permit a general objection that fails to identify specific factual or legal issues from the R. & R. as it duplicates the magistrate judge's efforts and wastes judicial resources.  *See Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  After reviewing the evidence, the Court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations.  *See* 28 U.S.C. § 636(b)(1)(C).

Under 28 U.S.C. § 2255, a prisoner in custody may move to vacate, set aside, or correct a sentence on grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255(a).  When the prisoner alleges constitutional error, the error must be one of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings to warrant relief.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).  Non-constitutional errors, on the other hand, are generally outside the scope of Section 2255 relief and only merit relief if the prisoner establishes a "fundamental defect which inherently results in a complete miscarriage of justice."  *Reed v. Farley*, 512 U.S. 339, 348 (1994); *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000).

## III.   DISCUSSION

### A.   Defendant's Objections

Villa raises five objections to the R. & R.  (Def.'s Objs. 4-22, DN 263).  While some objections are substantive, others are not.

### 1.    *Objection No. 1*

First, Villa objects to the finding that "two emails form the crux of Villa's contention that he was never advised of a potential plea agreement."  (Def.'s Objs. 4, DN 263 (quoting R. & R. 6, DN 259)).  Villa asserts that his contention is "that he was never advised of the Government's potential concurrent sentencing recommendation, and not a potential plea agreement."  (Def.'s Objs. 4, DN 263).  The substance of this objection, however, is addressed as part of his fifth objection, which is discussed below.

### 2.    *Objection No. 2*

Villa also challenges the R. & R.'s summary or synopsis of the testimony from four witnesses who testified during the evidentiary hearing.  (Def.'s Objs. 4, DN 263 (quoting R. & R. 7-16, DN 259)).  Instead of addressing those issues specifically in this objection, Villa includes those details within his fifth objection.  To the extent necessary, the Court will address the substance of this objection in addressing Objection No. 5.

### 3.    *Objection No. 3*

In addition, Villa objects to a scrivener's error in the R. & R. in which a person is referred to as Maria Lopez when the person's name is Maria Perez.  (Def.'s Objs. 5, DN 263 (quoting R. & R. 8, DN 259)).  As Villa acknowledges, however, the correct name appears later in the R. & R., and to the extent that there is any confusion, Villa has clarified the record.  (Def.'s Objs. 5, DN 263 (quoting R. & R. 14, DN 259)).

### 4.    *Objection No. 4*

Villa also raises an objection to the R. & R. as to the standard of review to the extent that it mentioned a sentencing error.  (Def.'s Objs. 5, DN 263 (quoting R. & R. 16-17, DN 259)).  To be clear, the R. & R. relates to Villa's tenth claim based on ineffective assistance of counsel.

5.     *Objection No. 5*

Villa mainly focuses on his final objection in which he claims the R. & R. is flawed in its analysis and conclusion that his ineffective assistance of counsel claim fails on the merits.  (Def.'s Objs. 7-22, DN 263).  This claim arises from the communications between Judd, Meier, and Villa regarding a potential plea agreement before Villa pled guilty in this action.  In particular, Villa asserts that there was a formal plea offer for cooperation and a concurrent sentence which Meier failed to share with him.[2]  (Def.'s Objs. 7-10, DN 263).

In *Missouri v. Frye*, 566 U.S. 134 (2012), the Supreme Court held "that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Id*. at 147.  As a sister court has noted:

> While the Supreme Court declined to offer a generally applicable definition of a "formal offer" in *Frye*, it did instruct that "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations."  Additionally, it noted that the "formal offer" at issue in *Frye* was set forth in a written letter, provided a choice of two plea agreements, and had a fixed expiration date.

*Robinson v. United States*, Nos. 3:17-CV-341-TAV-HBG/3:13-CR-71-TAV-HBG-6, 2020 WL 5805513, at *2 (E.D. Tenn. Sept. 29, 2020) (internal citation omitted) (citing *Frye*, 566 U.S. at 138-39).

---

[2] In arguing that there was a formal plea offer, Villa points to a prior ruling in this case.  (Def.'s Objs. 10, DN 263 (citing Mem. Op. & Order 2, DN 222)).  That decision, however, occurred before the evidentiary hearing was held on remand.  The Sixth Circuit specifically remanded this case to address certain factual issues—including potentially through an evidentiary hearing—regarding the merits of Villa's tenth claim.  *See Villa*, 56 F.4th at 421.  Therefore, that prior ruling does not impact this Court's ruling after the evidentiary hearing.

In challenging the Magistrate Judge's recommendation, Villa contends the record reflects that "the January 21, 2016[,] email [from Judd] was 'a concrete offer' and comprised a formal, not an informal plea offer, constitutionally requiring its disclosure and conveyance to VILLA by Meier." (Def.'s Objs. 10, DN 263 (citing R. & R. 30, DN 259)).  As Villa acknowledges, plea agreements are governed by contract principles. (Def.'s Objs. 10, DN 263 (citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986))); *see also United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991) ("Plea agreements are contractual in nature.").  In evaluating whether there is a formal offer, the inquiry is whether the "terms which would typically require substantial negotiation and compromise (e.g., whether defendant would agree to cooperate, whether the government would recommend a specific sentence, whether the government would agree to dismiss one of the two charges in exchange for a guilty plea) [] remained undefined." *Robinson*, 2020 WL 5805513, at *3.  "If the Government did not make a formal plea offer, then the issue of defense counsel's ineffectiveness in communicating a plea offer 'simply does not arise.'" *Boney v. United States*, Nos. 17-197-CFC/11-55-CFC, 2020 WL 1333285, at *4 (D. Del. Mar. 23, 2020) (quoting *Lafler v. Cooper*, 566 U.S. 156, 168 (2012)); *see also United States v. Torres*, No. 6:17-CR-40-CHB-9, 2022 WL 983146, at *7 (E.D. Ky. Mar. 30, 2022) (finding that the plea communications reflected an invitation to negotiate rather than a formal offer with the defendant's desired terms).

It is clear that there was *a* formal plea offer presented in this matter.  That formal offer, however, was a standard plea offer pursuant to Fed. R. Crim. P. 11(c)(1)(B), which was sent by Judd to Meier by email on January 9, 2016. (Def.'s Mot. Amend & Suppl. Section 2255 Pet. Ex. A, at 1, DN 174-1).  Contrary to Villa's assertions, the formal offer made by Judd contained neither an agreement for cooperation nor a recommended concurrent sentence.  (R. & R. 29, DN 259 (citing Evidentiary Hr'g Tr. vol. 1, at 26-29, 33, DN 242)).

The relevant communications between counsel are two emails from Judd to Meier on January 9 and 21, 2016. In the January 9 email to Meier, Judd stated:

> I have attached a proposed plea agreement for Amaury Villa.
>
> If he would like to cooperate, including testifying in the grand jury, please let me know and I can prepare a cooperation agreement with him.
>
> Please let me know how you all wish to proceed. Thanks.

(Def.'s Mot. Amend & Suppl. Section 2255 Pet. Ex. A, at 1, DN 174-1). The proposed plea agreement attached to the email was a standard B plea agreement. (Def.'s Mot. Amend & Suppl. Section 2255 Pet. Ex. A, at 2-11, DN 174-1). In Judd's email to Meier eleven days later, Judd stated:

> What's the status with Amaury Villa? What do you all want to do? I also thought we were going to meet with him soon on a transport from Grayson.
>
> I would agree that you all could argue for concurrent sentences but I'm not going to recommend it at this time unless there is some additional cooperation. For instance, if he pleaded, cooperated against Camillo, and testified, I would consider changing that recommendation.
>
> Let me know your thoughts. Thanks.

(Def.'s Mot. Amend & Suppl. Section 2255 Pet. Ex. B, at 1, DN 174-2).

During the evidentiary hearing, Meier recalled his conversation with Villa about the proposed plea agreement conveyed by Judd as follows:

> Q.    Did he reject the plea agreement in this case that was sent to you?
> A.    Well, I discussed with him—yes. We discussed the possibility of a plea, and I explained a (B) plea. The (B) plea agreement that was sent in this case, in my opinion, was completely run of the mill and nothing better than the client could get if he were just to plead without a plea agreement and go to the Court. It was a low—what we call a low-end (B) plea, meaning wherever the guidelines shook out, the government would agree to the low end of whatever range that is, and then you give up your right to appeal both your guilty plea and your sentence.
>       My experience in the Western District is for the most part judges tend to go to the low end, if not lower. And, you know, you don't have a right to appeal.

Certainly, you don't have a right to appeal, then, if you have some kind of disagreement with the way the judge came across the final guideline calculation.

So, yes, I explained that all to him.  I told him, you know, of course I couldn't guarantee where a judge would come.  You were not agreeing to a concurrent sentence.  You were agreeing to give him his three levels off for pleading guilty and go to the low end of the guidelines, and there was a no cooperation clause and no agreement for a concurrent sentence.  And after discussions about the pros and cons of accepting that standard offer versus pleading guilty and leaving the—without a plea agreement and leaving it totally up to the judge—of course, it's always up to the judge—but without a plea agreement and reserving your right to appeal, he agreed that that was the way he wanted to proceed, without a plea agreement.

. . .

Q.      And so the decision was made to do an open plea, and who made that decision to enter an open plea in May—I believe May 17th of 2016?

A.      That was Mr. Villa's decision.  Before the—we had met before the 17th— probably the week before, a few days before—in Grayson County, and that's when that was discussed.

Q.      And did you go through, you know, I guess, the pros and cons of both the written (B) plea with the no cooperation supplement and an open plea with Mr. Villa?

A.      Yes.

(Evidentiary Hr'g Tr. vol. 1, at 26:23-28:2, 28:16-25, DN 242).

Judd's emails do not support a finding that there was firm offer relating to cooperation and a recommendation or agreement for a concurrent sentence.  Meier's recollection of his discussion with Villa about the proposed plea agreement is consistent with the email messages.  These emails are more properly viewed as an invitation to negotiate on other potential terms, but the parties still needed to engage in substantial negotiation and compromise before there was an agreement to add terms to the proposed plea agreement.  *See United States v. Slane*, No. 11-CR-81, 2015 WL 728481, at *17 (W.D. Pa. Feb. 19, 2015) ("In this Court's estimation, the language of the email constitutes an invitation to negotiate and not an enforceable offer.  'A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.'"  (citation omitted)); *Robinson*, 2020 WL 5805513, at *3; *see also United*

9

*States v. Torres*, No. 6:17-CR-40-CHB-9, 2022 WL 983146, at *7 (E.D. Ky. Mar. 30, 2022) (finding that the communications reflect an invitation to engage in further negotiation rather than constituting a formal offer); *Lawler v. Ryan*, No. CV-08-1953-GMS-PHX, 2009 WL 4730735, at *4 (D. Ariz. Dec. 2, 2009) ("Those courts that have addressed this issue have held that failure to convey an invitation to negotiate does not constitute ineffective assistance." (quoting *Berthoff v. United States*, 140 F. Supp. 2d 50, 58 (D. Mass. 2001); *Frost v. United States*, No. 00 Civ. 8463(HB)/96CR.553(HB), 2002 WL 1941469, at *3 (S.D.N.Y. Aug. 21, 2022)).  Because such additional negotiations and compromise as to cooperation and a recommendation for a concurrent sentence did not occur here, there was no formal offer containing those terms which had to be conveyed to Villa.  As a result, the record does not support the alleged ineffective assistance of counsel claim relating to any terms of cooperation and a recommended concurrent sentence.

Likewise, Villa's argument that Meier failed to communicate Judd's formal plea offer lacks merit.  As to the actual formal offer made and communicated by Judd to Meier via email, Meier did present the proposed plea agreement to Villa, but its terms were not acceptable to him.  (Change Plea Hr'g Tr. 5:21-6:1, DN 108; Evidentiary Hr'g Tr. vol. 1, at 24:10-12, 26:23-28:2, 54:1-2, 59:20-25, 60:21-61:2, DN 242).  Therefore, the record does not support an ineffective assistance of counsel claim based on the formal offer received from Judd and conveyed to Villa by Meier.

Even if the January 21, 2016, email did not contain a formal plea offer, Villa contends the R. & R. erroneously concluded that he was not entitled to relief.  (Def.'s Objs. 15, DN 263).  In particular, he asserts that the Magistrate Judge erred in distinguishing this case from *Byrd v. Skipper*, 940 F.3d 248 (6th Cir. 2019).  (Def.'s Objs. 15-16, 21, DN 263).

In *Byrd*, the Sixth Circuit held that the petitioner had established an ineffective assistance of counsel claim relating to defense counsel's failure to initiate plea negotiations. *See Byrd*, 940 F.3d at 260. The Sixth Circuit reasoned:

> On the basis of a thoroughly unreasonable misunderstanding of the law, Byrd's counsel advised him incorrectly, dismissed his inquiries about a plea bargain, and single-mindedly pursued a near-impossible chance at acquittal. As a result of this incompetence, Byrd was deprived of the opportunity to negotiate a plea when sworn testimony confirmed the typicality of the prosecutor awaiting defense counsel's showing interest in negotiating pleas and the legitimacy of the expectation that the judges of that court would accept such reasonable pleas. This combination of factors and circumstances exposes a Sixth Amendment violation by Byrd's counsel.

*Id*.

More recently, in *Carson v. United States*, 88 F.4th 633 (6th Cir. 2023), the Sixth Circuit noted that *Byrd* specifically addressed a defense counsel's failure to even initiate plea negotiation when the United States had not proposed any plea terms. The Sixth Circuit stated:

> At the same time, we recognized [in *Byrd*] that a defendant raising this type of ineffective-assistance claim must meet a "formidable standard" to prove prejudice. The defendant must show a reasonable probability that the prosecution would have offered a plea deal, that the defendant would have accepted the proposed terms, that the trial court would have approved it, and that the deal would have contained better terms than the judgment that resulted from the trial.

*Id.* at 640 (internal citation omitted) (citing *Byrd*, 940 F.3d at 257).

While Villa contends that *Byrd* is analogous to the case *sub judice*, this argument is not supported by the record in this case that there were communications from Judd regarding plea negotiations and that Meier discussed the formal offer made with Villa. In addition, Meier did not impede the plea bargain negotiations because he instructed his office's investigator, John Iorio, to set up the proffer session and arrange for Villa's transportation to the meeting. (Evidentiary Hr'g Tr. vol. 1, 36:20-37:6, DN 242). Meier also testified that he discussed a potential proffer with Villa, who expressed interest in participating, and Meier responded that he would pursue setting

up a proffer session.  (Evidentiary Hr'g Tr. vol. 1, 37:7-12, DN 242).  Finally, as discussed above, Meier testified that he met with Villa and discussed the proposed plea agreement, and after that meeting, Villa rejected the formal plea offer made and entered an open plea.  (Evidentiary Hr'g Tr. vol. 1, at 26:23-28:2, 28:16-25, DN 242; Order, DN 78).  Thus, the R. & R. did not err in distinguishing *Byrd*.

Villa also points to his lack of awareness of the purpose of the meeting on February 1, 2016.  (Def.'s Objs. 17-22, DN 263).  As the Magistrate Judge noted, "Villa was not on proper notice of the intention of the meeting.  Villa's denial to cooperate appears to be prompt and incongruent with this participation at prior cooperation meetings, indicating that Villa did not know the courthouse meeting's purpose."  (R. & R. 20, DN 259).  While Villa may not initially have known of its purpose, Iorio encouraged Villa to give the prosecutor something to show cooperation, but Villa declined to do so and expressed no interest in cooperating.  (Evidentiary Hr'g Tr. vol. 1, at 154-55, DN 242).  Nevertheless, at that point, there was only an invitation to negotiate and no firm offer from the United States to recommend a concurrent sentence if Villa cooperated.  Thus, these circumstances do not support Villa's ineffective assistance of counsel claim based on a firm offer which lacked the terms he now claims were included in the offer.

Finally, as part of his last objection, Villa asserts that the Magistrate Judge erred in finding that Villa had failed to prove that "AUSA Judd would not have rescinded the offer, [or] that the Court would have accepted the plea agreement."  (Def.'s Objs. 18, DN 263 (quoting R. & R. 32, DN 259)).  Villa's argument is again premised on a formal offer involving cooperation and a recommendation for a concurrent sentence, which is not supported by the record.  While making arguments as to why his disagrees with that finding, Villa does not point to any evidence in the record to contradict that finding in the R. & R.  (Pl.'s Objs. 18-21, DN 265).

For these reasons, Villa's objections are not supported by the record and the R. & R.'s reasoning. These objections are overruled.

**B**.    <u>**United States' Objections**</u>

The United States has also objected to the R. & R. and raises two objections. It contends that the tenth claim is time-barred and that the claim does not relate back under Fed. R. Civ. P. 15(c).[3]

The arguments in support of its objections, however, are the same arguments raised in its post-hearing response to Villa's brief verbatim. (*Compare* Pl.'s Resp. Def.'s Mot. Amend & Suppl. Section 2255 Pet. 12-20, DN 247, *with* Pl.'s Objs. 14-23, DN 265). As a sister court has explained:

> A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a [magistrate judge's] suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in [the] context [of 28 U.S.C. § 636(b)(1)].

*Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Because the United States' objections are improper because they simply repeat arguments presented to the Magistrate Judge, those objections are overruled.

**C**.    <u>**Certificate of Appealability**</u>

The Magistrate Judge recommended that a certificate of appealability be issued on Villa's tenth claim. (R. & R. 32, DN 259). The United States objects to that recommendation. (Pl.'s Objs. 29-30, DN 265).

---

[3] The R. & R. concluded it was unnecessary to address the applicability of the relation back doctrine. (R. & R. 25 n.6, DN 259).

Based on this Court's review of the R. & R., reasonable jurists could debate the merits of Villa's tenth claim for ineffective assistance of counsel. Accordingly, a certificate of appealability is granted for this claim.

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Defendant's Objections (DN 263) and Plaintiff's Objections (DN 265) are **OVERRULED**.

2.    The Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 259) is **ADOPTED**, and Defendant's Motion to Amend and Supplement 2255 Petition (DN 174) is **DENIED**.

3.    The issuance of a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

October 15, 2024

cc:    counsel of record